Frank **TURNLEY**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 49S00–9812–CR–757.

Supreme Court of Indiana.

March 21, 2000.

Jan B. Berg, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Frank Turnley was convicted of murder, felony murder, conspiracy to commit murder, two counts of conspiracy to commit burglary, two counts of burglary, and criminal deviate conduct. He was sentenced to an aggregate term of 145 years imprisonment. In this direct appeal he contends: (1) the trial court committed fundamental error by giving the reasonable doubt instruction recommended by a majority of this Court in *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind.1996), and (2) he cannot be convicted of three counts of conspiracy when there was only one agreement to commit a burglary. We vacate the conspiracy to commit murder conviction and one of the conspiracy to

commit burglary convictions, but otherwise affirm the trial court.

**Factual and Procedural Background**

Monique Hollowell was strangled to death in her home in the early morning hours of February 29, 1996. A week later, Turnley told a detective that he had information about the crime. After being advised of and waiving his Miranda rights, Turnley gave a statement to police. According to the statement, Mark Anthony Thacker approached him on the morning of February 28 with a proposal to burglarize the home of a mutual acquaintance, Anthony Hollowell. Anthony was going to be out of town and his wife Monique had recently received a tax refund check of approximately two thousand dollars. Thacker proposed that they break into the Hollowells' home in the daytime when no one would be home. Thacker added that, if the men were unable to locate the money, they would return that evening and take Monique's purse. Turnley agreed.

At about noon, the two went to the Hollowells' home. Turnley served as a lookout while Thacker broke a window in a rear door to gain entry. A search of the house failed to locate any money. According to Turnley, Thacker said, "[W]e'll just have to come back tonight," and the pair left. The pair returned to the Hollowells' apartment at about 12:30 a.m. on February 29. After an unsuccessful search for money downstairs, Thacker took a knife from the kitchen and the two proceeded up the stairs. They had a brief conversation outside of Monique's room, in which Thacker stated, "[W]e have to kill her now.... [I]f we can't creep past and get the purse, I have to kill her." Thacker then entered the room, jumped on top of Monique, who was sleeping in her bed, and began to choke her. According to Turnley, Thacker pulled him into the room. While Thacker was choking Monique, Turnley restrained her hands for a few seconds. After Mo-

nique lost consciousness, Turnley placed his finger in her vagina and Thacker poured a bottle of toilet bowl cleaner on her face. Thacker then searched dresser drawers and a purse but found no money. Monique died as the result of manual strangulation.

Thacker and Turnley were each charged with eight counts: murder, felony murder, conspiracy to commit murder, two counts of conspiracy to commit burglary, two counts of burglary and one count of criminal deviate conduct. Thacker was tried first, convicted of six counts, and sentenced to 175 years imprisonment. *See Thacker v. State*, 709 N.E.2d 3, 5 (Ind. 1999). Turnley was then tried, convicted of all eight counts, and sentenced to 145 years imprisonment.

**I. Reasonable Doubt Instruction**

Turnley argues that the trial court erred in giving the reasonable doubt instruction recommended by a majority of this Court in *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind.1996). He concedes that he did not object to this instruction at trial, but contends the instruction is fundamentally erroneous. As we have observed in several cases, giving this instruction is not error, let alone fundamental error. *See Williams v. State*, 724 N.E.2d 1093, 1094 (Ind.2000); *Dobbins v. State*, 721 N.E.2d 867, 874–75 (Ind.1999); *Ford v. State*, 718 N.E.2d 1104, 1105 (Ind.1999); *Barber v. State*, 715 N.E.2d 848, 851–52 (Ind.1999); *Williams v. State*, 714 N.E.2d 644, 650 (Ind.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1195, 145 L.Ed.2d 1099 (2000).

**II. Multiple Conspiracy Convictions**

▆▆▆ Turnley also contends that one of his two conspiracy to commit burglary convictions and his conspiracy to commit murder conviction should be vacated because the evidence presented at trial proved only one agreement.[1] Indiana has long followed the rule that where there is evidence

---

1. As an alternative, Turnley asserts that there is insufficient evidence to support these convictions. We need not address this conten-

tion, which essentially duplicates the issue as framed in the text, because we vacate two of the conspiracy convictions on other grounds.

of only one agreement, there can be only one conspiracy conviction, even if the agreement is to commit multiple crimes. *See Thacker v. State*, 709 N.E.2d 3, 7 (Ind.1999); *see also Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942). The "one conspiracy, one conviction rule derives from the notion that the agreement is the criminal act, and therefore one agreement supports only one conspiracy, even if multiple crimes are the object of the agreement." *Thacker*, 709 N.E.2d at 8.

The State charged Turnley with three counts of conspiracy: one for conspiring to commit murder, one for conspiring to commit burglary when Thacker and Turnley went to the Hollowells' on the afternoon of February 28 and another for conspiring to commit burglary when they returned early on February 29. The jury found Turnley guilty as to all three. Turnley admitted in his statement to the police and at trial—and concedes in this appeal—that he conspired with Thacker on the morning of the 28th to burglarize the Hollowells' home. However, he contends that the evidence presented at trial was of a single agreement to commit burglary, not of three separate agreements (two to commit burglary and one to commit murder).

The State responds that Thacker and Turnley made three separate agreements. In support of the second conspiracy to commit burglary, the State points to Turnley's testimony at trial. Turnley responded affirmatively when asked on cross-examination, "So, it was decided ... after you went over there the first time and Mr. Thacker couldn't find any money inside the apartment, that he'd come back later that evening?" Turnley later testified, consistent with his statement to police, that he and Thacker had agreed on the morning of February 28 to return that evening to take Monique's purse if they were unsuccessful

in the afternoon. Because the evidence regarding the second conspiracy to commit burglary was conflicting, the State contends it was the jury's prerogative to conclude that there were two separate agreements to commit burglary. In support of a separate agreement to commit murder, the State points to Turnley's statement to police in which he said that, before Thacker and he entered Monique's bedroom, Thacker told him, "[W]e have to kill her now." When asked why Thacker made that statement, Turnley responded, "I have no idea. He uh, if we can't creep past and get the purse, I have to kill her."

### A. *Conspiracy to Commit Burglary*

■ We agree with Turnley that there was only one agreement to commit a burglary. The agreement was to attempt to locate the money during the afternoon, while Monique was at work, but it also contemplated returning that evening if the money could not be found. After the afternoon burglary proved unfruitful, the men returned twelve hours later to try again to locate the money. As the United States Supreme Court observed in *Braverman*, 317 U.S. at 53, 63 S.Ct. 99:

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

Here, Turnley committed and was properly convicted of two burglaries. These crimes, however, were committed pursuant to a single agreement to steal money from Monique Hollowell. Accordingly, only one conspiracy to commit burglary conviction (Count IV) can stand.[2]

---

**2.** We note that the jury was not instructed on the "one conspiracy, one conviction" rule. Rather, the trial court gave a single instruction defining the crime of "conspiracy." No other instruction suggested that the State

needed to prove separate agreements to prove each separate conspiracy count. The jury may very well have been left with the impression that one agreement could support more than one conspiracy count.

## B. *Conspiracy to Commit Murder*

█ The *Braverman* rule does not apply, however, to the conspiracy to commit murder count. Although the original agreement to steal Monique's money envisioned the possibility of two separate burglaries, it did not envision killing her. The State argues that there is evidence that Thacker and Turnley formed a separate agreement to kill Monique at the top of the stairs immediately before entering her room. Under this view, Thacker's statement that Monique must be killed followed by Turnley's assisting in the killing formed an agreement to do Monique in.

█ Even if the evidence supported an agreement apart from participation in the murder, the conspiracy to commit murder count must be vacated because it would violate the Indiana Double Jeopardy Clause. *See* Ind. Const. art. I, § 14. As this Court recently explained in *Richardson v. State,* 717 N.E.2d 32, 53 (Ind.1999),

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

The conspiracy to commit murder charge, which was read to the jury as part of the preliminary instructions, alleged that Turnley agreed with Thacker to murder Monique by strangulation and that Turnley's restraint of Monique on a bed was the overt act in furtherance of that agreement. The murder charge, also read to the jury as part of the preliminary instructions, alleged that Turnley knowingly killed Monique by manual strangulation.[3] Under these instructions, there is at least a reasonable possibility—indeed a high probability—that the jury used the same evidentiary fact—the restraining and strangulation of Monique—to prove an essential element of the conspiracy to commit murder (the overt act) and also the essential element of murder. Thus, even if there was a separate agreement to murder, conviction of conspiracy to commit murder and murder would violate the Indiana Double Jeopardy Clause. Accordingly, we remand to the trial court with instructions to vacate this count.

## Conclusion

Frank Turnley's convictions for murder, criminal deviate conduct, two counts of burglary, and one count of conspiracy to commit burglary (Count IV) are affirmed. This case is remanded with instructions to vacate Count III (conspiracy to commit murder) and Count VI (conspiracy to commit burglary).[4]

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

3. The closing arguments of counsel were not included in the record of proceedings.

4. There appears to be a clerical error in Part 2 of the Abstract of Judgment, which lists Count V as running concurrently with other counts. This is at odds with the trial court's sentencing statement that "Count Five [twenty years] will be run consecutively to sentence imposed on Counts One [sixty-five years], Seven [twenty years], Six [twenty years] and Eight [twenty years]." It is also at odds with the statement in Part 3 of the Abstract that the total sentence is 145 years. When preparing an amended abstract to reflect the vacated counts, the trial court can easily correct this clerical error as well.