**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 25 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**E. THOMAS KEMP**
Moore Kemp, LLP
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1110-CR-490 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE CIRCUIT COURT
The Honorable David A. Kolger, Judge
Cause No. 89C01-0902-FA-3

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Anthony Wilson appeals his convictions for dealing in cocaine, as a Class A felony, and maintaining a common nuisance, as a Class D felony, following a jury trial. Wilson presents the following issues for review:

1. Whether the trial court committed fundamental error when it admitted at trial evidence seized from a warrantless motel room search.

2. Whether the trial court committed fundamental error when it admitted into evidence a police officer's testimony that possession of nearly sixteen grams of cocaine is an amount indicative of someone who is dealing in cocaine.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 22, 2009, Alea Rowland completed a registration card and rented Room 118 at the Super 8 Motel in Richmond. Rowland provided a local address on the registration card. The following morning, a white male paid cash to rent the room for ten nights. Motel personnel were instructed that housekeeping should not clean the room.

Prior to Rowland's room rental, the Richmond Police Department had asked for assistance from local motels in identifying signs of drug use. Officers had informed hotel personnel that indicators of drug activity included local people staying at the motel, having one person rent the room but another person stay there, hotel guests taking out their own trash, and guests not wanting housekeeping to clean the room. On January 30, Patricia Fox, the Super 8 Motel general manager, contacted Richmond Police Department Officer John Lackey and reported that she suspected drug activity in Room 118. Officer Lackey met Fox at the motel, and she informed him of the circumstances of the rental of

2

Room 118. Based on that information, Officer Lackey decided to do a "knock and talk" and called for back-up. Transcript at 293.

Sergeant Jon Bales and Officer Mark Sutton arrived as back-up and accompanied Officer Lackey to Room 118. When Officer Lackey and Sergeant Bales approached the door, they heard a male voice speaking inside. The officers knocked, and the occupant asked who was there. They observed that the room's interior light became blocked in the door's peephole, indicating that someone had approached the door from inside the room and looked through the peephole. The officers knocked a second time, and the occupant again asked who was there. Officer Lackey replied that it was the police. The occupant said to wait a minute because he was on the toilet. The officers then heard the toilet flush.

Based on the information they had received from Fox, the exchange they had just had with Room 118's occupant, and the history of drug activity in hotels close to the interstate such as the Super 8 Motel, the officers "strongly believed" that there was drug activity in Room 118 and that the occupant was attempting to destroy evidence. Id. at 295. Using a master key he had obtained from the general manager, Officer Lackey opened the door and entered the room with Sergeant Bales. The officers saw Wilson, the only occupant, walking from the bathroom into the main room.

The officers detained Wilson and frisked him for officer safety. On Wilson's person Officer Lackey found a total of $1600 in various pockets. In a front pocket of Wilson's hoodie the officer found an empty plastic baggie that contained white powder residue. Based on his training and experience, Officer Lackey believed the residue to be

3

cocaine. When Wilson refused the officers' request to search the room, the third officer left to apply for a warrant while the other two officers stayed with Wilson. In plain view in the room, the officers observed white powder residue on the floor and a plastic baggie containing a white powder on a desk. The baggie found on the desk was later determined to contain creatine, a common cutting agent used to dilute cocaine for sale.

When the third officer returned with a search warrant, the officers searched the room and found under the bed a "push-rod" used to smoke crack cocaine. Id. at 300. The officers also found a set of scales. And upon searching Wilson's person, they found five baggies containing what later tested to be 15.97 grams of crack cocaine.

The State charged Wilson with dealing in cocaine, as a Class A felony, and maintaining a common nuisance, as a Class D felony. Wilson filed a motion to suppress the evidence seized from the motel room. The trial court denied the motion following a hearing and permitted the State to introduce the evidence at the ensuing trial without objection by Wilson. At the close of trial, a jury found Wilson guilty as charged, and the trial court entered judgment of conviction accordingly. The trial court later sentenced Wilson to twenty-five years for dealing in cocaine, with five years suspended, and to one year for maintaining a common nuisance, to be served concurrently. Wilson now appeals.

## DISCUSSION AND DECISION

### Issue One:  Evidence Seized Without Warrant

Wilson first contends that the trial court committed fundamental error when it admitted at trial evidence seized from the motel room search. Specifically, Wilson

4

argues that the officers' entry of the motel room was illegal, that any evidence seized as a result of that entry was illegally seized as fruit of the poisonous tree and, therefore, that the trial court erred by admitting the same into evidence at trial. But Wilson concedes that he did not object at trial to the admission of such evidence, which is a prerequisite for preserving the issue for review. See Minneman v. State, 441 N.E.2d 673, 675 (Ind. 1982), cert. denied, 461 U.S. 933 (1983). To avoid waiver, Wilson contends that the admission of that evidence constitutes fundamental error.

A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the appellate court determines that a fundamental error occurred. Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Id. (citing Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." Id. (citing Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009)). This exception is available only in "egregious circumstances." Id. (citation omitted).

Warrantless searches are generally prohibited unless an exception or exigent circumstances exist. Ward v. State, 903 N.E.2d 946, 957 (Ind. 2010), cert. denied, 130 S. Ct. 2060 (2010). The need to prevent imminent destruction of evidence is one such exigent circumstance. Id. The State must show that the officers had an objectively

reasonable belief that people within the premises are presently destroying or directly about to destroy evidence, the nature of which must have an evanescent quality. Holder v. State, 847 N.E.2d 930, 938 (Ind. 2006) (citations omitted). Similarly, when considering a warrantless entry under the exigent circumstances rule, the United States Supreme Court has recently held that, where "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent destruction of evidence is reasonable and thus allowed." Kentucky v. King, 131 S. Ct. 1849, 1858 (2011).

We need not consider Wilson's claim that the evidence against him was seized illegally because Wilson cannot show fundamental error. Our supreme court has explained the burden to show fundamental error arising from the admission of illegally seized evidence:

> An error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Id. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. Id. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

Brown, 929 N.E.2d at 207. Here, as in Brown, Wilson has not asserted the fabrication of evidence, any willful malfeasance by the investigating officers, or that the evidence is not what it appears to be. Instead, Wilson asserts only that the officers' entry of the motel room was illegal and, therefore, that the seizure of evidence was likewise illegal. But the

6

claim that the trial court erred by admitting illegally seized evidence at trial, without more, fails to assert fundamental error. Brown, 929 N.E.2d at 205. As such, Wilson has not demonstrated fundamental error.

### Issue Two: Officer Opinion Testimony

Wilson next contends that the trial court committed fundamental error when it allowed Officer Sutton to testify that the amount of cocaine found on Wilson's person was consistent with dealing in cocaine. Again, Wilson did not object at trial, and to avoid waiver of the issue he maintains that the admission of that testimony amounts to fundamental error. And again, we cannot agree.

At trial Officer Sutton testified that nearly sixteen grams of cocaine constitutes an amount indicating dealing and not personal usage. Wilson argues that that testimony constitutes improper opinion testimony on Wilson's guilt or innocence, which is prohibited under Scisney v. State, 690 N.E.2d 342 (Ind. Ct. App. 1997), aff'd in relevant part, 701 N.E.2d 847, 849 (Ind. 1998), and Evidence Rule 704(b). But even if we were to conclude that the trial court erred in admitting that testimony, which we do not, Wilson has not shown beyond mere allegations that such an error made a fair trial impossible or constituted clearly blatant violations of due process.[1] See Brown, 929 N.E.2d at 207. Wilson has failed to demonstrate fundamental error. Therefore, his second argument must fail.

---

[1] Indeed, Scisney holds that an expert in the drug trade field may offer testimony as to whether particular facts tend to be more or less consistent with dealing in drugs. 690 N.E.2d at 346. That was the nature of Officer Sutton's testimony here. As such, even if Wilson had timely challenged Officer Sutton's testimony, the trial court would have overruled the objection. See id.

7

**Conclusion**

Wilson has not shown fundamental error by the trial court's admission of evidence seized from the motel room. Nor has he shown that Officer Sutton's testimony constituted improper opinion evidence prohibited by case law or by Evidence Rule 704(b). In sum, Wilson has not demonstrated any fundamental error by the trial court in the admission of any evidence or testimony. We affirm his convictions.

Affirmed.

RILEY, J., and DARDEN, Sr.J., concur.